JOSEPH H. BARTON, and
FAITH B. PIERCE,

      Plaintiffs,

                                 CASE NO. 05-73415
                                 HONORABLE DENISE PAGE HOOD

v.

OFFICER TERRY PRIEST, OFFICER DAVID FOBAR,
SGT. CULLEN, OFFICER KRAMER, DORIS
JOHNSON, Jointly and Severally,

      Defendants.

_____/

**ORDER GRANTING IN PART, AND DENYING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT [DOCKET NO. 26], DENYING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT [DOCKET NO. 41 and DENYING PLAINTIFFS'
MOTION TO REOPEN DISCOVERY, TO COMPEL DISCOVERY, TO ALLOW THE
ADDITION OF POLICE EXPERT AND TO CONSOLIDATE FOR TRIAL [DOCKET
NO. 54]**

## I.    INTRODUCTION

      This matter is before the Court on Defendants Priest, Fobar, Cullen and Kramer's Motion

for Summary Judgment [**Docket No. 26, filed March 26, 2007**], Plaintiffs Barton's and Pierce's

Motion for Summary Disposition on Illegal Arrests, Illegal Entry and Illegal Search Claims

[**Docket No. 41, filed June 26, 2007**] and Plaintiffs' Motion to Reopen Discovery, to Compel

Discovery, to Allow the Addition of a Police Expert and to Consolidate for Trial [**Docket No.

54, filed October 13, 2007**]. Responses and Replies have been filed for all motions.

      On September 2, 2005, Plaintiffs, Joseph Barton and Faith Pierce, husband and wife,

filed the instant matter, case number 05-73415, pursuant to 42 U.S.C. § 1983, alleging that

Defendants, City of Southgate police officers, violated their First and Fourteenth Amendment rights.  Plaintiffs also asserted various state law claims, specifically, false arrest and malicious prosecution, assault and battery, intentional infliction of emotional distress, and invasion of privacy.  Lastly, Plaintiffs alleged state law claims of conspiracy, false accusation and invasion of privacy against Defendant Johnson only.

## II.    STATEMENT OF FACTS

Plaintiff Barton is a minister of the Gospel, and a pastor of Downriver Community Church.  Plaintiff Pierce, his wife, works with him in the church.  In late August and early September of 2003, Plaintiffs Barton and Pierce had Plaintiff Huckaby, a resident of Kentucky, as a house guest in their home.  The three had met through a Christian internet friendship website.

On the evening of September 1, 2003, and the early morning hours of September 2, 2003 all three engaged in a prayer and counseling session.  Apparently, Plaintiffs Barton and Pierce were counseling Plaintiff Huckaby as she was contemplating marriage to a minister.  After this session, Plaintiff Huckaby determined that she was unprepared to become the wife of a minister and decided to return home to Kentucky.  Around 9:44 a.m. on September 2, 2003, Plaintiff Huckaby began packing her belongings into her vehicle.

Defendant Johnson, Plaintiffs Barton's and Pierce's neighbor, witnessed Plaintiff Huckaby packing up her car, believed that a home invasion was occurring as she had never seen Plaintiff or the car before, and contacted the Southgate police. (Case No. 06-13909, Docket No. 13, Ex. 2, p. 34)  Defendants Officers Terry Priest and David Fobar arrived, first stopping at Defendant Johnson's home, where she directed them to Plaintiffs' home. *Id.*

Defendants approached Plaintiff Huckaby as she was packing up her car. Defendants arrested Huckaby, claiming that she gave contradictory and incomprehensible answers to their inquiries, as well as failed to produce identification.

After arresting Huckaby, Defendant Priest entered the home, announcing his presence. Plaintiffs Barton and Pierce informed the officers that everything was fine, that they were the homeowners and requested that the officers leave. However, Defendants refused to leave, continued their investigation and demanded that Plaintiff Barton produce identification. Plaintiff Barton demanded that the officers leave, because they lacked a warrant. When the officers refused to leave, Barton began to proceed upstairs to retrieve his identification, with Defendant Priest following him. Both Plaintiffs pleaded with the officers that they did not wish for them to go any further into their home. Defendant Fobar apparently pushed Plaintiff Pierce out of the way when she tried to prevent Defendant Priest from following her husband upstairs. Officer Priest proceeded upstairs.

When Defendant Priest reached Plaintiffs' bedroom, he encountered Plaintiff Barton putting away a legally owned handgun, that he kept near his bed. Defendant Priest claimed that Plaintiff Barton pointed the handgun at him and proceeded to place Plaintiff Barton under arrest.

Plaintiff Barton asserts that Defendant Priest began to strike him and upon hearing the noise, Defendant Fobar proceeded to the second floor and joined in Priest's attack. Plaintiff Barton was struck with fists and a baton, handcuffed, then sprayed with a chemical agent. When Plaintiff Pierce protested the officers' abuse of her husband, Defendant Fobar likewise hit her with the baton. Defendants Sergeant Cullen and Officer Kramer arrived on the scene at this point, and allegedly observed and participated in the forceful arrest.

Plaintiffs further assert that after they were taken to the Southgate Police Department, Defendant Cullen remained at their residence and searched through their home, finding and seizing legally owned rifles.  Defendants eventually released both Plaintiffs Pierce and Huckaby. Plaintiff Barton  was subsequently charged with felonious assault, and resisting arrest.  (Docket No. 26, Ex. 13).  He was acquitted of the felonious assault charge, but convicted of resisting arrest after a jury trial. (Docket No. 27, Ex. 14, Transcript of trial by jury, day 3 of 3, pp. 15, 50-51).  Plaintiff Barton later appealed his conviction, and the conviction was affirmed.  (Docket No. 26, Ex. 15).

## III.    STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact.  The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The moving party has "the burden of showing the absence of a genuine issue as to any material fact."  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985).  In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party.  *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983).  But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry to summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In

such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

To create a genuine issue of material fact, the nonmovant must do more than present "some evidence" of a disputed fact. "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Accordingly, a nonmovant "must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted).

## IV. ANALYSIS

### A. 42 U.S.C. § 1983, False Arrest, Malicious Prosecution, First Amendment Retaliation

In defense of the state charges filed against Plaintiff Barton, a motion to quash the information was filed specifically contesting the officers' authority to follow Plaintiff Barton upstairs and into the bedroom. A suppression hearing was conducted in State Court where Plaintiff Barton moved to have any testimony or evidence obtained after the officers went upstairs suppressed on the grounds that it was an illegal search, conducted in violation of the Fourteenth Amendment. (Docket No. 26, Ex. 16 pp. 21, 23-32). The State Court found that an exception to the search warrant requirement existed, and exigent circumstances justified the officers extending the search of the home. The state court Judge specifically ruled that it was proper for the officers to follow Plaintiff Barton upstairs because the safety of the officers required that they keep Plaintiff Barton within their sight. (*Id.* at pp. 29-31).

The State Court found, as a preliminary matter, that the officers had probable cause to enter the home and investigate whether a home invasion was in fact taking place and, after Mr. Barton proceeded upstairs, that the officers had legal authority to follow him upstairs. *Id.* The Court also found that after Plaintiff Barton was followed upstairs and pointed a gun at Officer Priest, the officers had probable cause to arrest him for felonious assault. (Docket No. 26, Ex. 17, Preliminary Exam Tr., p. 34). At the Preliminary Exam, Plaintiff Barton was bound over on all three charges. During the motions to quash, Plaintiff Barton challenged the bind-over, claiming that the State District Court judge abused his discretion. The State Circuit Court judge reviewed the matter and found no abuse of discretion, upholding the State District Court's finding of probable cause to bind over. (Docket No. 26, p. 8).

Plaintiffs allege that their civil rights were violated when Defendants entered their home, refused to leave, followed Plaintiff Barton into his upstairs bedroom, arrested Plaintiffs, and seized weapons that were found in the house. (Compl., ¶¶ 21-51). Plaintiffs claim that the officers acted in retaliation against them for asserting their First Amendment rights, violating the Fourth Amendment prohibition against unreasonable searches and seizures, arguing that the officers had no right to enter their home without a search warrant, extend the search upstairs, arrest them, use excessive force, and cause them to be falsely arrested and maliciously prosecuted. *Id.*

This case is similar to *Schreiber v. Moe*, in which excessive force, false arrest, and illegal imprisonment were also alleged. *Schreiber v. Moe*, 445 F.Supp.2d 799, (W.D. Mich. 2006). The *Schreiber* Court held Plaintiff's civil rights claims to be barred by *Heck v. Humphrey*, stating "Section 1983 plaintiffs are barred from advancing claims that, if successful, 'would necessarily

imply the invalidity' of a prior criminal conviction, or sentence." *Id.* (citing *Heck v. Humphrey,* 512 U.S. 477 (1994)).

For Plaintiffs' claims to succeed, this Court would have to find that the officers lacked probable cause to arrest and imprison Plaintiff Barton, a finding which would necessarily imply the invalidity of the State Court jury's conviction under M.C.L. 750.81d(1). As such, Mr. Barton's false arrest and illegal imprisonment claims are barred by *Heck.* Here, also, the altercation between Officer Priest, Officer Fobar, and Plaintiff Barton gave rise both to Plaintiff Barton's resisting arrest conviction, and his excessive force claim, and "the two are inextricably intertwined." *Cummings v. City of Akron,* 418 F.3d 676 (6th Cir. 2005).

Plaintiff Pierce claims that *Heck* cannot bar her claims, as she was not a party to the state court proceedings. *Heck* analysis, however, does bar her claims as the same probable cause found to exist in Plaintiff Barton's criminal case necessarily undercut Plaintiff Pierce's claims, as the search pertained to the same house.

Plaintiffs, relying on *Heck,* also claim that Plaintiff Barton did not receive a full and fair hearing because Officer Priest supplied false evidence during the prosecution, on which the State Court relied to establish probable cause for the felonious assault charge. Plaintiffs cite *Hinchman v. Moore,* which explicitly expressed its skepticism regarding the underlying logic of the earlier Sixth Circuit ruling, *Darrah v. City of Oak Park*, 255 F.3d 301 (6th Cir. 2001), stating that:

> A state court judge ruling on the presence or absence of probable cause in a criminal action must necessarily take into account the veracity of the officers' statements. At the preliminary hearing in the present case, *Hinchman* was free to cross-examine the two defendants and to take the stand herself in an effort to discredit their testimony. Whether or not she did so, *Darrah* allows her a second bite at the probable-cause apple, a result that is diametrically opposed to the collateral-estoppel concept . . .

*Hinchman v. Moore*, 255 F.3d 301, 311 (6th Cir. 2002). The Sixth Circuit has since ruled in *Prokos*

*v. City of Athens* that:

> When a plaintiff has sought to revisit the probable cause issue in a subsequent civil suit in federal court, this circuit has found merit to the claim only where the plaintiff was unable to place on the state court record allegations about false statements or misrepresentations by law enforcement officials, or some basis to demonstrate sufficient evidence to require an evidentiary hearing on the issue of probable cause, citing *Hinchman v. Moore*, 312 F.3d 198, 202-04 (6th Cir. 2002). . .

> *Prokos v. City of Athens*, 118 Fed. Appx. 921 (6th Cir. 2004).

In this case, similar to *Prokos,* Plaintiff Barton has had the opportunity to cross-examine prosecution witnesses and put contentions regarding alleged misrepresentations or false representations by Officer Priest on the record before the criminal court. *(See* Docket No. 50, Exh. 36, Prelim. Ex. Tr., pp. 25-26, 29-30, 32 and 34; Exh. 37, Mot. To Quash/Suppress Tr., pp. 4-7, 10, 17). Plaintiff Barton attempted to exclude evidence of anything found in the officers' search, claiming that extension of the search violated the Fourth Amendment. Plaintiff Barton did not prevail on his Motion to Quash in state court, was ultimately convicted by a jury, and he will not be given this opportunity to have a second bite at the apple, potentially invalidating the state court felony conviction.

Accordingly, *Heck* bars both Plaintiffs' 42 U.S.C. § 1983 claims, as Plaintiff Pierce stands in privity with her husband, and is also collaterally estopped from re-litigating the lawfulness of the officers' entry into the home and subsequent search of the premises. *McCormick v. Braverman,* 451 F.3d 382, 396, 398 (6th Cir. 2006); *JMS & Assoc. Inc. v. Eastman Kodak Co.,* 156 F.3d 1230 (6th Cir. 1998); *Richards v. Jefferson City,* 517 U.S. 793 (1996). Plaintiff Barton's false arrest and malicious prosecution claims are similarly barred by the doctrine of res judicata.

## B.     Remaining Federal Claims

Plaintiffs claim that a separate Fourth Amendment violation occurred when, after Barton was

placed in the police car, the officers continued to search the house and came upon a locked room in the basement. (*See* Docket No. 42, Ex. 13). Defendants rely on *Marland v. Buie* for the proposition that the Defendants had a right to search the remainder of the premises incident to the arrest of Plaintiffs. *Maryland v. Bui*e, 494 U.S. 325 (1990). *Maryland v. Buie* states:

> There must be articulable facts which taken with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger. Such a protective sweep is not a full search of the premises, but may extend only to cursory inspection of those spaces where a person may be found. The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises.

*Id.*

Here, Kendra Huckaby was arrested outside the house and by the officers' own admission, did not appear to represent any danger. Plaintiffs Barton and Pierce were arrested inside the house and there was no reason to suspect anyone else was inside the premises. In *United States v. Ankrawi*, the Sixth Circuit held unconstitutional a protective sweep of a house after an arrest occurred where the officers could point to no specific basis for believing anyone posed a threat. *Unitest States v. Ankrawi*, 920 F.2d 418, 420-421 (6th Cir. 1990). Summary judgment cannot be granted regarding the reentry into the home to search the basement, as there are many questions of fact remaining, and evidence to support Plaintiffs' theory that after the police arrested Plaintiff Barton and found the assault rifles, they simply decided to search the remainder of the home absent a search warrant. As such, Plaintiffs' remaining federal claims relating to the warrantless search of their basement are allowed to proceed.

### C.     State Law Claims

Plaintiffs have also asserted state law claims of assault and battery, intentional infliction of emotional distress, and invasion of privacy against the individual officers. (Comp., Counts V-VII).

28 U.S.C. §1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. §1367(c)(3). Once a court has dismissed a plaintiff's federal claim, the court must exercise its discretion on whether to exert its supplemental jurisdiction under §1367. Courts are to consider factors of judicial economy, convenience, fairness to litigants, and comity. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966). However, when "federal law claims are eliminated before trial, the balance of these factors will point toward declining to exercise jurisdiction over the remaining state-law claims." *Wright v. Associated Ins. Cos., Inc.,* 29 F.3d 1244, 1251 (7th Cir. 1994).

Plaintiffs request this Court to invoke its supplemental jurisdiction powers to review their state law claims. The Sixth Circuit held in *Manchester v. Lewis that* "jurisdiction cannot be conferred on the federal courts by the procedural device of filing an unsubstantial action under §1983 and relying on the doctrine of pendent jurisdiction." *Manchester v. Lewis,* 507 F.2d 289, 291 (6th Cir. 1974). Because federal claims remain in this case, this Court will continue to exercise its pendent jurisdiction to entertain Plaintiffs' state law claims against the officers. Plaintiffs' claims for assault and battery and invasion of privacy are barred under *Heck* for the same reasons discussed prior, and are DISMISSED from this case.

Intentional infliction of emotional distress generally requires a plaintiff to prove: (1) the defendant's extreme and outrageous conduct; (2) the defendant's intent or recklessness; (3) causation; and (4) the severe emotional distress of the Plaintiff. *Moore v. Detroit,* 252 Mich. App. 384, 389; 652 M.W.2d 688 (2002). For liability to attach a plaintiff must demonstrate that the defendant's conduct is "so outrageous in character, and so extreme in degree, as to go beyond all

possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized setting." *Lewis v. LeGrow*, 258 Mich. 175, 196; 670 N.W.2d 675 (2003). In *Walsh v. Taylor* the court dismissed the plaintiff's intentional infliction of emotional distress claim when the evidence reflected that the police officers pursued an arrest against Plaintiff on the basis of presumptively credible information, amounting to probable cause. *Walsh v. Taylor,* 263 Mich. App. 618; 689 N.W.2d 506 (2004). Similar to *Walsh,* in this case the police officers were acting on presumptively credible information. Plaintiffs' intentional infliction of emotional distress claim is DISMISSED.

Plaintiffs allege conspiracy, false accusation and invasion of privacy against their neighbor, Defendant Johnson only. (Compl., Count VIII). This Court DISMISSES the claims against Defendant Johnson without prejudice since it appears she has not been served, and Plaintiffs have not proceeded with the suit against her.

### D.    Motion to Re-Open Discovery

Plaintiffs claim that Defendants have refused to provide the dispatch codes for the night in question, and are seeking copies of the codes which Defendants are withholding due to the passing of the discovery cutoff date. Plaintiffs further request copies of records of a nervous breakdown suffered by Plaintiff Faith Pierce, requiring hospitalization on or about September 3, 2007. Plaintiffs also seek to retain Dr. Clinton Donaldson or some other appropriate police expert to testify concerning the propriety of the officers' actions. Plaintiffs request that this Court reopen discovery for a period of not less than sixty to ninety days, and direct Defendants to provide Plaintiffs with the pepper-spray policies and dispatch codes in effect in the Southgate Police Department in September of 2003, and allow the parties thirty days to name a police practices expert, if they wish.

Motions for summary judgment were completed and filed several months prior to Plaintiffs'

requests, and oral argument was held on the matters a full two months prior to Plaintiffs' request to reopen discovery. Reopening discovery and adding experts will necessitate further delay and expenses to both sides. Plaintiffs failed to properly request the dispatch codes in the course of regular discovery, and untimely motions to compel are disfavored. *See Suntrust Bank v. Blue Water Fiber, LP,* 210 FRD 196, 200 (E.D. Mich. 2002). Plaintiffs have not demonstrated good cause for their failure to obtain discovery through the exercise of due diligence, as mandated by the Sixth Circuit. *Newman v. Federal Express Corp.,* 266 F.3d 401 (6th Cir. 2001).

Because this Court is denying Plaintiffs' request to reopen discovery, the expert they seek to introduce to opine on the matters that would have been discovered is unnecessary. Further, Plaintiffs' request to discover records relating to Plaintiff Pierce's alleged nervous breakdown allows Plaintiffs to seek to update Dr. Shiener's, Plaintiffs' expert psychiatrist, evaluation to examine Ms. Pierce's recent medical condition. Although Plaintiffs have not sufficiently explained why they need a subpoena to receive their own records, the Court allows the updating of medical records. This Court DENIES in part Plaintiffs' Motion. The discovery may not be reopened except for the discovery of Plaintiff Pierce's medical records; no additional police expert may be named.

## V.    CONCLUSION

Accordingly,

IT IS ORDERED that Defendants Priest, Fobar, Cullen and Kramer's Motion for Summary Judgment [**Docket No. 26, filed March 26, 2007**] is GRANTED in part, and DENIED in part.

IT IS FURTHER ORDERED that Plaintiffs Barton's and Pierce's Motion for Summary Judgment on Illegal Arrests, Illegal Entry and Illegal Search Claims [**Docket No. 41, filed June 26, 2007**] is DENIED.

IT IS FURTHER ORDERED that all of Plaintiffs' federal claims are dismissed from this action, except the claims relating to the alleged re-entry into Plaintiffs' basement.

IT IS FURTHER ORDERED that Plaintiffs' state law claims against the officers of assault and battery and invasion of privacy are DISMISSED from this action.

IT IS FURTHER ORDERED that Defendant Johnson is DISMISSED without prejudice for failure to prosecute.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Reopen Discovery, to Compel Discovery, to Allow the Addition of a Police Expert and to Consolidate for Trial [**Docket No. 54, filed October 13, 2007**] is DENIED in part, and GRANTED in part.

IT IS FURTHER ORDERED that a status conference on this matter is set for October 20, 2008 at 4:00 PM.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  September 19, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 19, 2008, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager